UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**GLORIA BECKER**, as Personal Rep.
of the Estate of Kenneth Becker,

      CASE NO: 06-CV-13432

    Plaintiff,

      DISTRICT JUDGE THOMAS L. LUDINGTON
*v.*      MAGISTRATE JUDGE CHARLES E. BINDER

**ROTARY AIR FORCE MANAGEMENT, INC.,**
a/k/a **Rotary Air Force Marketing, Inc.,**
a foreign corporation,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**
(Dkt. 17)

**I.**    **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED IN PART** and **DENIED IN PART** as follows:

    1) that as to Rotary Air Force Management, Inc., the motion be **GRANTED**, and

    2) that as to Rotary Air Force Marketing, Inc., the motion be **DENIED.**

**II.**    **REPORT**

    **A.**    **Introduction**

Pending, pursuant to an Order of Reference for general case management (Dkt. 7), is the above-entitled motion. Plaintiff responded opposing the motion. (Dkt. 19.) An evidentiary hearing was held on January 4, 2007, during which Charles Lesley (Les) Brown, a Canadian

Chartered Accountant[1], testified. A series of exhibits relating to Defendant's Canadian corporate status were introduced and both parties presented oral argument. The parties now having filed post-hearing briefs (Dkts. 25 & 27), the motion is ready for report and recommendation.

**B.    Background**

Plaintiff filed this action on July 21, 2006, alleging that Defendant's negligent manufacture of an RAF gyroplane caused Plaintiff's decedent's fatal injuries incurred on July 4, 2005, when, shortly after taking off, the gyroplane he was piloting crashed after oscillations caused its rotor blades to destructively impact its pusher propeller. (Dkt. 1.) The complaint raises counts of Strict Liability/Wrongful Death, Negligence – Failure to Warn, Negligence – Faulty Design, and Breach of Implied Warranties. (*Id.*)

Defendant is incorporated in Canada and maintains in this motion that there are insufficient contacts either with the United States or the State of Michigan to justify the exercise of personal jurisdiction. Defendant argues that it has no commercial ties to the United States or to the State of Michigan, nor has it has availed itself of any United States legal protection. In support of that contention, Defendant cites an affidavit by Donald La Fleur.

Plaintiff counters that Defendant has engaged in extensive dealings in the United States and in the State of Michigan. In support of this contention, Plaintiff cites from an Internet website of Rotary Air Force,[2] as well as a series of communications between employees of Rotary Air Force and Plaintiff's decedent. As to the affidavit, Plaintiff contends that Mr. LaFleur is in fact the general manager of both of Rotary Air Force Management, Inc., and Rotary Air Force Marketing, Inc.

---

[1] Mr. Brown testified that this status is the Canadian equivalent of what is known in the United States as a Certified Public Accountant.

[2] *See* << http://www.rotaryairforce.com/ >>. This website also contains illustrative photographs.

The crux of Defendant's argument is that Plaintiff has improperly sued two separate Canadian corporate entities, Rotary Air Force Management, Inc. (hereinafter "Management"), and Rotary Air Force Marketing, Inc. (hereinafter "Marketing"), which are in fact distinct corporate entities that are chartered differently under Canadian corporate law, have different corporate purposes, and cannot be considered in either the "a/k/a" (also known as) or "d/b/a" (doing business as) status ascribed to them by Plaintiff. Under questioning by the Court during the hearing, counsel for Defendant conceded the accuracy of many of the exhibits attached to Plaintiff's response which counsel represented corroborate that Marketing has had consistent ties to the United States, but strenuously maintained Management has had no such ties.

At the hearing, Mr. Brown testified that he is a minority shareholder in both Marketing, which he characterized as a "aircraft company," and Management, which he characterized as "the machine shop oilfield company [.]" (Hearing Transcript, Dkt. 26 at 28.) Mr. Brown stated that he provides "advisory services" from time to time to the corporations, but does not act as their "external accountant," as that is prohibited in Canada. (*Id*.) He testified that both corporations were initially set up in the Canadian province of Alberta and subsequently moved to Saskatchewan. (*Id*. at 29.) According to Mr. Brown, the corporate charter for Marketing is what is known in Canada as a "Dominion Charter." (*Id*.) As such, he testified that information relating to Marketing should not be assessable through the Corporate Registry of Saskatchewan. Mr. Brown testified that any Saskatchewan registry information found in Internet searches would be in error, as Marketing ceased to exist as a Saskatchewan Registry Corporation in 1991. (*Id*.) According to Mr. Brown, a Canadian provincial corporation can only do business within the province in which it is incorporated. (*Id*. at 30.) In contrast, a dominion or federally-chartered Canadian corporation is registered under the Canada Business Corporations Act and can do

3

business anywhere in Canada. (*Id.*) Mr. Brown then explained in the differing tax obligations of provincial and dominion chartered Canadian corporations. (*Id.* at 31.)

During examination by Defendant's counsel, Mr. Brown testified that Management has spent less than $5,000 on advertising in the last five years, entirely in Saskatchewan. (*Id.* at 32.) According to Mr. Brown, Management spent nothing on advertising for gyroplanes, as it is "not in the gyroplane business. It produces oil field equipment." (*Id.* at 33.) He testified that Management has two or three customers that are "oil-based entities from Alberta" who buy products from Management. (*Id.*) All of Management's assets are in Saskatchewan, and Management does not own any parts, molds, deposits or other assets relating to gyroplanes. (*Id.* at 34.) Mr. Brown testified that Marketing owns those assets necessary to the development and sale of gyroplanes. (*Id.*) Mr. Brown stated that he was familiar with the advertising and sales efforts of Marketing at aviation events in the United States. (*Id.* at 35.)

Mr. Brown then described his understanding of the corporate history of Management (*id.* at 35-36) and the background underlying a Canadian Certificate of Amalgamation executed in August 1992. (Def.'s Hrng. Ex. B.) He stated that the LaFleurs and another family originally did business in Alberta, but moved to Saskatchewan in 1991 in order to take advantage of a government program for Management to set up a machine shop. (*Id.* at 35-36.) The purpose of the Certificate was "to get rid of the corporations that had been registered extra-provincially." (*Id.*) Mr. Brown then described the Certificate of Amendment for Marketing (Def.'s Hrng. Ex. C), noting that this Certificate was issued under the Canada Business Corporations Act. (*Id.* at 38.) During questioning by the Court, Mr. Brown stated that all the specialized tools parts and components used in the manufacture of gyroplanes was owned exclusively by Marketing. (*Id.* at 40.)

Under cross-examination, Mr. Brown was presented with the results of an Internet search of Saskatchewan corporation branch information. (*Id*. at 41, Pl.'s Hrng. Ex. 1.) Mr. Brown agreed that the document contained entries listing Management which indicated that the nature of its business was the manufacture and sale of home-build aircraft kits and components. (*Id*. at 41-42.) Mr. Brown strenuously maintained that this entry was in error and that "there has never been a dollar of revenue recorded nor reported nor earned by Rotary Air Force Management, Inc., in the sale of home-build aircraft kits or components." (*Id*.) Under further questioning, Mr. Brown suggested the possibility that Mrs. LaFleur may have given out erroneous information "completely contrary" to the incorporation documents. (*Id*. at 44.) Mr. Brown agreed that both entities operate from the same address, that they share some facilities, but that the "aircraft operations are largely isolated from the oil field applications." (*Id*. at 45.) He estimated that Management employs approximately 4 people while Marketing has between 10 and 14 employees. (*Id*. at 46.) Mr. Brown stated that at one time there was an entity known as Rotary Air Force, Inc., which he referred to as "the old corporation," which he stated was now defunct. (*Id*. at 50.)

In addition to its cross-examination of Mr. Brown and presentation of oral argument, counsel for Plaintiff proffered during the hearing and in briefing a series of exhibits including: facsimile correspondence between Plaintiff's decedent and employees of Marketing (Dkt. 19 at Ex. 2); information relating to the gyroplane apparently gathered through an Internet search (*Id*. at Ex. 3); product information mailed apparently mailed to Plaintiff's decedent (*id*. at Ex. 4); copies of correspondence forwarded to the Court and Plaintiff's counsel by representatives of the Defendant prior to the Defendant's retention of counsel (*Id*. at Ex. 5); and the earlier-described printout of an Internet inquiry to the Saskatchewan provincial Corporate Registry. (*Id.* at Ex. 1.)

**C.     Law and Analysis**

    **1.     Motion Standards and the Parties' Burdens**

Motions for dismissal are governed by Rule 12(b) of the Federal Rules of Civil Procedure. A motion to dismiss for lack of personal jurisdiction is brought pursuant to Rule 12(b)(2). In deciding a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings, such as affidavits, without converting the motion to dismiss into a summary judgment motion under Rule 56. The reason that the "conversion rule" only applies to 12(b)(6)

> is fairly clear. There never has been any serious doubt as to the availability of extra-pleading material" with regard to motions under Rules 12(b)(1) through 12(b)(5) and 12(b)(7), because motions under those rules "only challenge the propriety of the court adjudicating the claim before it and do not reach the validity of the claim itself.

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (2d ed.).

In this case, Plaintiff carries the burden of proving the Court's jurisdiction over the entities sued. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). In this circuit:

> If the district court rules on a Fed. R. Civ. P. 12(b)(2) motion before trial, as in this case, it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n.,* 875 F.2d 1212, 1214 (6th Cir. 1989).

*Intera Corp. v. Henderson,* 428 F.3d 605, 614 n.7 (6th Cir. 2005). *Serras* points out that where, as in this case, an evidentiary hearing has been conducted, the burden on the party asserting jurisdiction quite properly increases. Plaintiff is required to establish that jurisdiction exists by the same standard that would apply at trial: that is, by a preponderance of the evidence. *Serras, supra,* at 1214.

6

**2.     Personal Jurisdiction**

"In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment." *Bagsby v. Gehres*, 195 F. Supp. 2d 957, 961 (E.D. Mich. 2002) (citing *Neogen Corp*, 282 F.3d at 888). In Michigan, jurisdiction over the person can exist on the basis of general personal jurisdiction, *see* MICH. COMP. LAWS §§ 600.701 and 600.711, or limited personal jurisdiction, *see* MICH. COMP. LAWS §§ 600.705 and 600.715.   In this case, both parties appear to focus on Michigan's concept of limited personal jurisdiction.

Limited personal jurisdiction may be exercised over a defendant who has certain minimum contacts with the forum but only over claims which arise from or relate to those contacts. *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991).  However, even a single contact with the forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim.  *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998).  *See also LaFarge Corp. v. Altech Environmental USA*, 220 F. Supp. 2d 823, 828 (E.D. Mich. 2002).

Defendant's business dealings in Michigan need not be extensive or prolonged, since the Michigan statute[3] allows "any business" dealings to suffice, and "any" includes even the slightest

---

[3]The applicable statute provides the following:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of **any business** within the state.
(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
(3)  The ownership, use, or possession of real or tangible personal property situated within the state.
(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the

7

amount. *See Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623 (1971). The Michigan Court of Appeals has broadly defined the concept of transacting business:

> The phrase "transaction of any business" is not defined in the statute. Therefore, it is proper to rely on dictionary definitions in determining the meaning of that provision. *Popma v. Auto Club Ins. Ass'n*, 446 Mich. 460, 470, 521 N.W.2d 831 (1994). "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." *Random House Webster's College Dictionary* (1997). "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit."

*Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (Mich. Ct. App. 2001) (holding that extensive marketing efforts directed toward Michigan consumers satisfied subsection (1) of Michigan Compiled Laws § 600.715).

The Court determines compliance with the Due Process Clause under the following three-pronged test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Neogen*, 282 F.3d at 890 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Regarding the first requirement, "purposeful availment" occurs when "the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "This purposeful

---

defendant.
(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

MICH. COMP. LAWS § 600.705 (emphasis added).

availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id*. A cause of action clearly arises from purposeful availment if the cause of action would not exist but for the contacts cited. *See Theunissen*, 935 F.2d at 1461; *Payne v. Motorists' Mutual Insurance Cos.*, 4 F.3d 452, 456 (6th Cir. 1993).

Once the first two factors have been established, only extraordinary circumstances will lead the Court to conclude that the assertion of jurisdiction would not be reasonable. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). The reasonableness of asserting jurisdiction is assessed by considering "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest in other states in securing the most efficient resolution of controversies." *Id*.

**3.     Discussion**

At the threshold, it appears that Defendant may fundamentally misapprehend or misstate the capacity in which it is being sued. Defendant frequently argues as if Management and Marketing are a single entity, and that dismissal of either necessitates dismissal of this entire action. I suggest, however, that this is not an accurate characterization of either the evidence or Plaintiff's pleadings. Plaintiff, as mentioned, has sued Management "also known as" Marketing. The evidence, however, makes abundantly clear that Management and Marketing are separate corporate entities and thus entitled to separate jurisdictional consideration. I therefore conclude that, irrespective of the parties' characterizations, the potential dismissal of either entity does not necessitate dismissal of Plaintiff's complaint for a failure of jurisdiction unless Plaintiff has failed to meet its jurisdictional burden as to both entities.

Under the standards set forth above, I first suggest that as to Management, Plaintiff has failed to meet its burden. Neither an entry in an Internet corporate registry (Hearing Ex. 1) nor the fact that a cover letter submitted to the Court by a representative of Defendant prior to its retention of counsel which includes a closing salutation listing both Marketing and Management, I suggest, trumps the actual organization of Management as evidenced by Mr. Brown's testimony and Management's Canadian certificate of incorporation. (Hearing Ex. B.) The evidence presented also fails to show that Management has violated its Canadian limited provincial corporate charter, and I can find no evidence that Management has either transacted any business in Michigan or purposefully availed itself of the privileges of Michigan's legal system.[4]

I further suggest that Plaintiff's assertions that Marketing and Management are effectively *alter egos* fails to be borne out by the evidence. Common ownership of assets or shared management are not of themselves sufficient. A corporation is an *alter ego* of its owner, or another entity under Michigan law if (1) "the corporate entity [is] a mere instrumentality of another entity or individual," (2) "the corporate entity [is] used to commit a fraud or wrong," and (3) "there [was] an unjust loss or injury to the Plaintiff." *Foodland Distribs. v. Al-Naimi*, 559 N.W.2d 379, 381 (Mich. Ct. App. 1997). If either entity is an *alter ego* of the other, then they are effectively the same entity.

Management and Marketing, however, are separately incorporated, one a provincial corporation, and the other a Canadian dominion or federal corporation. (Hearing Exs. B and C.) Their dates of incorporation are separated by over 2 years. (*Id.*) While there is overlap of some management and shareholders, there is no evidence that Management is a mere instrumentality of

---

[4]As is inherent in the definition set forth above, Defendant's appearance in this case cannot be considered purposeful availment, as it is not of its own volition. Rather Defendant was hailed into this court by virtue of Plaintiff's complaint.

Marketing or *vice versa*. Each entity has separate and different corporate purposes, and on this record, I can find no evidence that these purposes are mixed between Management and Marketing. I can find no evidence substantiating the use of the corporate form for fraud or to inflict unjust injury upon Plaintiff. Nor can I find any evidence that either entity is the agent of the other. *See, e.g., Hayes v. Emerick,* 416 N.W.2d 350, 351 (Mich. Ct. App. 1987) ("An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business . . . from another by authority and on account of the latter"). I therefore suggest that as to Management, Defendant's motion should be granted.

In its post-hearing brief, Plaintiff argues that Management and Marketing are parent and subsidiary. In Michigan, absent some abuse of the corporate form, parent and subsidiary corporations are presumed to be separate and distinct legal entities. *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995). This presumption, sometimes called "the corporate veil," may be pierced in the interests of justice or other overriding public policy. *See id.* In order to "pierce the corporate veil" and to state a claim "based on an alleged parent-subsidiary relationship, a plaintiff would have to allege: (1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil." *Id.* Michigan courts do not apply agency law to impute a subsidiary's knowledge to the parent. Rather, Michigan law requires facts sufficient to pierce the corporate veil. *Stryker Corp. v. XL Ins. America, Inc.*, No. 4:01-CV-157, 2006 WL 1997142, at *20 (W.D.Mich., July 14, 2006). Facts that justify piercing the corporate veil include facts showing the existence of an agency relationship between the entities or where the parent effectively controls the conduct of the subsidiary. *See Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001); *A. Stucki Co. v. Worthington Indus., Inc*., 849 F.2d 593, 596 (Fed. Cir. 1988).

Under these standards, I suggest that Plaintiff's argument fails to pass muster. First, Plaintiff has failed to explain which Rotary Air Force entity is the parent and which is the subsidiary. Second, and more importantly, as mentioned, I find no evidence on this record that either entity operates as the agent of the other. Furthermore, Plaintiff's argument blurs the fundamental principle of corporate law that a corporation is separate from its shareholders, as here the evidence shows that while both entities have common shareholders, there is no evidence that either entity *itself* owns stock in the other.[5]

As to Marketing, on the other hand, I suggest that Plaintiff has more than met its burden of asserting jurisdiction by a preponderance of the evidence. Virtually every exhibit relating to Marketing, as well as Mr. Brown's testimony, attest to the facts that Marketing manufactures and sells gyroplanes throughout both the United States and Canada and has more than the requisite minimum contacts. (*See, e.g.,* Pl.'s Br., Exs. 2 & 4). In fact, counsel for Defendant has essentially admitted as much both in its pleadings and oral argument.

I further suggest that the structure and format of the Rotary Air Force website do not compel a different result as to either Management or Marketing. In fact, I suggest that the website provides no support to Plaintiff's arguments whatsoever. First, a review of the Rotary Air Force website reveals no mention of Management. Second, one cannot make purchases directly through the website; it offers only the ability to receive a quote from Rotary Air Force on a gyroplane and/or equipment. In this circuit, "[t]he maintenance of [the defendant's] website, in and of itself, does not constitute the purposeful availment of the privilege of acting in [the forum state]." *Neogen Corp.*, 282 F.3d at 890. *See also Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)

---

[5]The case cited by Plaintiff in its post-hearing briefing, *Third National Bank v. Wedge Group, Inc.,* 882 F.2d 1087 (6th Cir. 1989), is, I suggest, distinguishable on its facts. More generally, the cases cited by Plaintiff have not been discussed, as virtually none of them involve Michigan law, and those that do stand for well-known general propositions.

12

("[T]he fact that [the defendant] maintains a website that is accessible to anyone over the internet is insufficient to justify general jurisdiction.").

In *Neogen*, the court cites *Zippo Mfg. Co. v. Zippo Dot Com,* 952 F.Supp. 1119, 1124 (W.D. Pa. 1997), for the concept that there are generally three levels of interactivity of websites, including: (1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer." *Zippo Mfg. Co.,* 952 F.Supp. at 1124. *Neogen* went on to hold that purposeful availment is shown "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." 282 F.3d at 890, and also broadly implied that a website is passive if it simply posts product and contact information. *Id.*

More explicit is Judge Gadola's ruling in *McGill Tech. Ltd. v. Gourmet Techs., Inc.*, 300 F. Supp. 2d 501, 507 (E.D. Mich. 2004), holding that the defendants' website was passive even though the website provided contact information because it was not possible for users to purchase products through the website. As in *McGill,* I conclude that the Rotary Air Force website provides information and allows contact, but does not provide for the direct purchase of products. On this basis, I therefore suggest that the Rotary Air Force website is passive, and cannot serve as a basis of the assertion of jurisdiction over either Management or Marketing.

Lastly, Plaintiff seeks leave to undertake additional discovery relating to jurisdiction. I suggest, however, that since Plaintiff was given considerable notice of the hearing, it had adequate opportunity to marshal evidence and call witnesses to support its jurisdictional assertions, and that the earlier-noted settled case law makes clear Plaintiff's burden and obligations when the Court proceeds to a pre-trial hearing on jurisdiction. I therefore suggest that denial of this request is appropriate.

**III.   REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                              s/ *Charles E. Binder*
                                                            CHARLES E. BINDER
Dated: February 8, 2007                              United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Timothy Currier, Alan Farkas, Brandt Madsen and Jeffrey Waltuck, and served on District Judge Ludington in the traditional manner.

Date:  February 8, 2007                     By     s/Jean L. Broucek
                                                            Case Manager to Magistrate Judge Binder
                                                            989-894-8821